Argued September 22; reversed October 13, 1931

MONAHAN et al. *v.* FUNK, City Auditor

(3 P. (2d) 778)

*Frank S. Grant,* of Portland (Robert A. Imlay, of Portland, on the brief), for appellant.

*Elton Watkins,* of Portland, for respondent.

BEAN, C. J.   This is a proceeding in mandamus to require the auditor of the city of Portland to submit a certain ordinance to a vote of the people by referendum. The question for determination is whether the ordinance of the city of Portland, Oregon, authorizing the commissioner of public utilities to purchase certain real property for the city of Portland, needed for a crematory site, and authorizing the mayor and auditor to draw and deliver warrants for the purchase price of the tract, upon conveyance of good title thereof, is legislative or administrative.   If the ordinance is municipal legislation, the referendum may be invoked; if administrative, it does not apply.

The city charter, as amended on November 6, 1928, by a vote of the people of the city, designated as section 342, authorized the council of the city to issue and dispose of bonds of the city in an amount not exceeding $300,000, and provided the details pertaining thereto. From the proceeds of the sale of the bonds, the council was authorized to pay the expenses of advertising and issuing said bonds "and to acquire real property, either by direct purchase or by condemnation proceedings, and when so acquired, to construct thereon a new crematory or incinerating plant, with all of the necessary equipment therefor."   For the purpose of administering the provisions of section 342, the council, on May 8, 1931, enacted ordinance No. 60655, entitled:

"An ordinance providing for the purchase of certain property containing in all approximately 295 acres for a garbage incinerator plant and providing for the drawing and delivery of a warrant."

The ordinance authorized the commissioner of public utilities to purchase, for the city of Portland, property needed for a garbage crematory site, described in the ordinance, and also authorized the mayor and auditor to draw and deliver a warrant for the purchase of the tract upon the conveyance of good title thereto to the city of Portland.

On June 6, 1931, the plaintiff presented to the appellant for filing, subject to verification as to the number and genuineness of the signatures and voting qualifications of the persons signing the same, the referendum petition, in form approved by the defendant, and as required by the laws of the state and ordinances of the city. The referendum purports to have been signed by plaintiff and 8,006 other citizens and voters of the city and state, which number of signers, if said signatures are genuine and the signatures of legal voters of the city, is more than 15 per cent of the votes cast at the last preceding city election, and is sufficient, under the provisions of the ordinance of the city providing for invoking the referendum upon any legislative act of the council. Defendant refused to accept the referendum petition for filing upon the ground that ordinance No. 60655 is an administrative, and not a legislative, act of the council, and therefore not subject to the referendum.

The defendant, in his answer, asserted that all of the acts leading up to the enactment of the ordinance and the passing of the ordinance itself, were administrative acts of the council involving the exercise of direct power and discretion lodged in the council by the terms and provisions of section 342 of the charter. The answer further asserts that in carrying out the terms of the charter amendment, immediately following the enactment thereof by the voters of the city, the council began

to look for property for the incinerator, and solicited and received a number of proposals for various tracts at different prices. The city engineer made a survey as to area and fitness of each tract submitted and reported his findings to the council. The council itself made an investigation of each proposed tract and the prices for which the proposed tracts might be purchased, and before its final determination of these facts the council held numerous public hearings, to which plaintiff and the general public were given ample and full opportunity to be heard, and were heard on numerous occasions. After consideration, the council determined to purchase the property described in ordinance No. 60655 and directed the city attorney to prepare an ordinance directing the commissioner of public utilities to make the purchase and prescribed the terms and conditions upon which the purchase was to be made. After the ordinance was prepared, further public hearings were had. Finally, on May 8, 1931, the ordinance was enacted.

The plaintiff demurred to the answer and return to the alternative writ of mandamus. The circuit court sustained the demurrer and directed the defendant to file as a valid referendum petition the referendum petition of plaintiff and 8,006 persons described in the alternative writ, subject to verification as to number and genuineness of the signatures and voting qualifications of the persons signing the same, as required by the ordinance of the city. The defendant auditor of the city appealed.

Section 1a, Art. IV of the Constitution of Oregon, adopted June 4, 1906, ordains in part that

"* * * The initiative and referendum powers reserved to the people by this constitution are hereby further reserved to the legal voters of every munici-

pality and district, as to all local, special and municipal legislation, of every character in or for their respective municipalities and district. * * *"

Section 19 of the charter of Portland provides that the referendum shall be exercised within the city of Portland in the same manner as provided by the constitution and general laws of the state and ordinances of the city of Portland enacted in pursuance thereof. By section 20 of the charter, the power and authority given to the city of Portland is vested in a council consisting of a mayor and four commissioners, subject to the initiative and referendum and other powers reserved to the people by the constitution.

Formerly the incinerating plants of the city were under the management, control and supervision of the Board of Health (§ 238 of the charter). That board was abolished by virtue of section 16 of the charter and authority was conferred upon the council.

In determining whether the ordinance in question was legislative or administrative, we notice that the authorities in the books are in accord that actions which relate to subjects of a permanent or general character are considered to be legislative, while those which are temporary in operation and effect are not. Acts, which are to be deemed as acts of administration and classed among those governmental powers properly assigned to the executive department, are those which are necessary to be done to carry out legislative policies and purposes already declared, either by the legislative municipal body, or such as devolved upon it by the organic law of its existence. The form of the act is not determinative; that is, an ordinance may be legislative in character or it may be administrative: 43 C. J. 585, § 952; *Long v. Portland,* 53 Or. 92 (98 P. 149, 1111); *Campbell v. Eugene,* 116 Or. 264 (240 P. 418).

■■ The crucial test, for determining that which is legislative and that which is administrative, is whether the ordinance was one making a law or one executing a law already in existence: *Campbell v. Eugene, supra.* By the enactment of section 342, the people of the city of Portland, in the exercise of their sovereign power, authorized the council "to acquire real property, either by direct purchase or by condemnation proceedings, and when so acquired, to construct thereon a new crematory or incinerating plant, with all of the necessary equipment therefor." The council, in directing the commissioner to purchase a tract of land, was executing that portion of the charter just referred to. If proceedings had been instituted by the city for the condemnation of the real property described, to be used for crematory purposes, it is very doubtful if the referendum petition would have been thought of. The act of purchasing a parcel of real estate is no more legislative than the act of purchasing a fire engine and truck. It is not the enactment of a permanent law for the guidance of the citizens of Portland: *Long v. Portland, supra; Campbell v. Eugene, supra; Roy v. Beveridge,* 125 Or. 92 (266 P. 230); *Joplin v. Ten Brook,* 124 Or. 36 (263 P. 893). In *Long v. Portland, supra,* the court said:

"The effect of the referendum will not, however, affect in any manner ordinances or resolutions of the council that are not 'municipal legislation.' * * * The only acts of the council that are subject to the referendum by section 1a, Article IV, are such as come within the term 'municipal legislation.' Legislation as here contemplated must be considered in the sense of general laws, namely, rules of civil conduct prescribed by the lawmaking power and of general application." Citing Opinion of the Justices, 66 N. H. 629 (33 Atl. 1076).

When the city of Portland receives the title to the land described in the ordinance and pays the purchase price thereof, the ordinance in question will practically be defunct. It prescribes no rule of civil conduct; it is not permanent, uniform or universal in its application to the general public. It was a carrying out of the business of the council by giving authority to the commissioner of public utilities for convenience in effecting the transaction. Under the charter, as it reads, the council, had it seen fit, could have made the purchase instead of authorizing the commissioner so to do.

It is said in 2 Lewis' Sutherland Statutory Construction (2d Ed.), § 490, that "The statutes are to be construed in the most beneficial way in which their language will permit to prevent absurdity, hardship or injustice; to favor public convenience and to oppose all prejudice to public interests."

■■ In ascertaining the intent of the people with respect to the scope and nature of the initiative and referendum powers, it is appropriate and important to consider what the consequences of applying it to a particular act of legislation would be, and if found to destroy the efficacy of other governmental power or to produce disastrous results, the court will not place such an interpretation on the constitution that will make it inapplicable or destroy or impair the efficacy of governmental power: *Chase v. Kalber,* 28 Cal. App. 561 (153 P. 397), 2 Lewis' Sutherland Stat. Const. (2d Ed.), § 490.

It is stated in 7 McQuillan on Municipal Corporations, § 351-C, p. 6621, in part as follows:

"Executive action evidenced by ordinance or resolution does not subject such action to the power of the referendum, which is restricted to legislative action, as distinguished from mere administrative action. The

form or name does not change the essential nature of the real step taken. The mode of effecting the action is not important. If legislative the law contemplates the people may invoke the referendum. The referendum is usually held 'applicable to all ordinances and resolutions which constitute an exercise of legislative power.' That is, it was designed to be directed against 'supposed evils of legislation alone.' 'To allow it to be invoked to annul or delay executive conduct would destroy the efficiency necessary to the successful administration of the business affairs of a city. * * *' '' *Brazell v. Zeigler*, 26 Okl. 826 (110 P. 1052).

In *Yarbrough, Mayor, v. Donaldson*, 67 Okl. 318, (170 P. 1165), under a state law authorizing the city council to sell and dispose of certain of its property, the city council adopted a resolution proposing to sell its electric light plant. The voters presented a referendum petition, which was declined, and mandamus proceedings were instituted. Passing upon the question, the court said:

"The city, by the resolution providing for the sale of its electric light plant, was not exercising a legislative function but was administering a law already made, to wit, section 541, supra, giving it the power to dispose of its property."

The only difference between the instant case and the last one mentioned is that the city of Portland is providing for the purchase of property instead of the sale. The principle involved is the same.

By section 342 of the charter the matter of purchasing the tract was reposed in the council for the exercise of their discretion. It would be a great hindrance to the ordinary transaction of the city's business if the purchase of the tract of land should be subject to referendum, and if that carried, then the contract for the erection of the plant should be submitted to the voters,

making three times that the voters would act upon the question. By the enactment of section 342, the people of the city of Portland voted for a crematory and conferred all the authority necessary to be conferred upon the city council. If the electors of the city desire to take further action they should take steps to repeal the charter. We hold that ordinance No. 60655 was not municipal legislation, but was an administrative act for the purchase of a piece of real estate.

The decree of the circuit court will therefore be reversed, and the cause will be remanded to the circuit court with directions to overrule the demurrer to defendant's answer and to dismiss plaintiff's suit.

BROWN, KELLY and CAMPBELL, J.J., concur.