Argued and submitted April 2, affirmed October 17, reconsideration denied
December 12, 1990, petition for review denied February 5, 1991 (311 Or 151)

In the Matter of the Proposal
to Declare a Threat to Drinking Water
in a Specifically Defined Area
in Mid-Multnomah County
Pursuant to ORS 454.275 et seq.

UNITED CITIZENS,
Daniel C. Phegley and Helen Osburn,
*Appellants,*

*v.*

OREGON ENVIRONMENTAL
QUALITY COMMISSION
and Oregon Department
of Environmental Quality,
City of Portland, City of Gresham
and Multnomah County,
*Respondents.*

(86C-11193; CA A62121)

799 P2d 665

Linda K. Williams, Portland, filed the brief and argued the cause for appellants.

Michael B. Huston, Assistant Attorney General, Salem, argued the cause for respondents Oregon Environmental Quality Commission and Oregon Department of Environmental Quality. With him on the brief were Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Michael D. Reynolds, Assistant Solicitor General, Salem.

Peter A. Kasting, Chief Deputy City Attorney, Portland, filed the brief for respondent City of Portland. Matthew R. Baines, Assistant City Attorney, Gresham, filed the brief for respondent City of Gresham. With him on the brief was Thomas Sponsler, Gresham City Attorney, Gresham.

No appearance for respondent Multnomah County.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Petitioners United Citizens, Daniel C. Phegley and Helen Osburn seek review of a circuit court decision affirming an order of the Environmental Quality Commission (EQC) under the Threat To Drinking Water Act, ORS 454.275 *et seq* (the Act), requiring that the cities of Portland and Gresham provide sewer service to "Mid-Multnomah County," an unincorporated area between Portland and Gresham. EQC's decision is an order in "other than a contested case." ORS 183.484. The circuit court reviewed the order pursuant to ORS 183.484, for substantial evidence and errors of law. We review the *circuit court's* decision affirming EQC to determine whether it correctly decided that EQC's order is supported by substantial evidence. ORS 183.500;[1] *Fadeley v. Ethics Comm.,* 30 Or App 795, 568 P2d 687 (1977).

The first question is whether petitioner United Citizens has standing. ORS 183.480 provides that "[a]ny person adversely affected or aggrieved by an order" of an administrative agency may seek judicial review. Phegley and Osburn own property and reside in the affected area. The petition alleges that they neither need nor desire sewers. Phegley alleges that he will be unable to afford to continue to live in his home if sewer connection charges are assessed. Osburn alleges that the imposition of a sewer assessment would add a significant and burdensome amount to her monthly cost of owning and maintaining her home and would thereby reduce the value of her home. Both Phegley and Osburn filed objections to EQC's proposed order. Respondents do not challenge Phegley's and Osburn's standing to seek review. In view of that and the fact that their arguments are identical to those of United Citizens, the question of whether United Citizens has standing is academic, *Thunderbird Motel v. City of Portland,* 40 Or App 697, 702 n 2, 596 P2d 994, *rev den* 287 Or 409 (1979), and we need not decide it.

Petitioners filed their petition for review on June 23, 1986. Portland and Gresham were not joined as parties until

---

[1] ORS 183.500 provides:

"Any party to the proceedings before the circuit court may appeal from the decree of that court to the Court of Appeals. Such appeal shall be taken in the manner provided by law for appeals from the circuit court in suits in equity."

September, 1988, when the circuit court ordered them joined as indispensable parties, pursuant to ORCP 29. We have considered and reject the cities' contention that the petition against them is barred by laches.

The Act provides a process by which EQC may order installation of sewers in an area where EQC determines that there is a threat to drinking water. The governing body of a municipality initiates the process of construction of sewage treatment works by adopting an ordinance or resolution proposing the construction. ORS 454.285(2). The resolution or ordinance must:

> "(a) Describe the boundaries of the affected area which must be located within a single drainage basin as identified in regional treatment works plans; and
>
> "(b) Contain findings that there is a threat to drinking water."

A threat to drinking water means the existence in any area of any three of these conditions:

> "(a) More than 50 percent of the affected area consists of rapidly draining soils;
>
> "(b) The ground water underlying the affected area is used or can be used for drinking water;
>
> "(c) More than 50 percent of the sewage in the affected area is discharged into cesspools, septic tanks or seepage pits and the sewage contains biological, chemical, physical or radiological agents that can make water unfit for human consumption; or
>
> "(d) Analysis of samples of ground water from wells producing water that may be used for human consumption in the affected area contains levels of one or more biological, chemical, physical or radiological contaminants which, if allowed to increase at historical rates, would produce a risk to human health as determined by the local health officer." ORS 454.275(5).[2]

In this case, Portland, Gresham and Multnomah County Central Service District No. 3 each adopted a resolution containing findings of a threat to drinking water in a specific basin within its jurisdiction and proposed plans for construction of

---

[2] ORS 454.275(5) has since been renumbered ORS 454.275(6). Or Laws 1987, ch 627, § 8.

sewage treatment works. EQC's order mandates construction of treatment works in the three sewer basins: Columbia, Gresham and Inverness.

■     Three of petitioners' assignments of error are premised on the argument that Portland's resolution, with regard to the Columbia Basin, is inadequate, because it fails to describe an affected area "located within a single drainage basin," as required by ORS 454.285(2)(a). Petitioners contend that Portland improperly considered the Columbia Basin and the Johnson Creek Basin to be a single basin and affected area and did not separately address the four criteria described in ORS 454.275(6) with respect to each of the basins. Instead, they contend, it made "global" findings as to the combined area and, therefore, it is not possible from the resolution to conclude that a threat to drinking water exists in each basin.

We conclude that substantial evidence supports EQC's finding that the Johnson Creek Basin is actually a sub-basin of the Columbia Basin. Portland's resolution incorporates a 1984 document, published by the East County Sanitary Sewer Consortium, entitled "Threat To Drinking Water Findings." That document treats the Johnson Creek Basin as a sub-basin of the Columbia Basin and addresses each of the four criteria of ORS 454.275 with respect to the Columbia Basin only. Because the Johnson Creek basin is within the Columbia Basin, we conclude that, with respect to Portland, the "affected area" for the purpose of ORS 454.285 is the Columbia Basin and conclude, further, that the Portland resolution adequately addresses each of the four criteria described in ORS 454.275 with respect to the affected area.

■     In their fourth assignment, petitioners contend that EQC's order is inadequate, because it does not separately address each of the four criteria with respect to each basin, Columbia, Gresham and Inverness, but treats the basins as a single affected area. Unlike the provisions of ORS 454.285, which prescribe the contents of the governing body's proposal, ORS 454.300, which relates to EQC's findings, does not require that EQC make specific findings with respect to each basin. We conclude that the order is adequate.

EQC's findings include an "overall conclusion":

"Based on the above information, a threat to drinking water

as defined in ORS 454.275(5) exists in the affected area in that at least three of the conditions cited are found to exist. Conditions (a), (b), and (c) clearly and decisively exist. Substantial evidence in the record also reasonably supports the conclusion that condition (d) is met in the affected area."

Petitioners contend that EQC erred in requiring only "substantial evidence" to reach its decision with respect to condition (d), rather than a "preponderance of the evidence." Assuming, without deciding, that EQC did, in fact, apply a "substantial evidence" standard of proof as to condition (d), the error is harmless. ORS 454.275(5) requires only that three of the four criteria exist in order for there to be a threat to drinking water. EQC found that the first three criteria "clearly and decisively exist." Its finding with respect to the fourth item was unnecessary.

■    We next address petitioners' contention that the Act infringes on the voters' right of referral and initiative. Article IV, section 1(5), of the Oregon Constitution provides, in part:

"The initiative and referendum powers reserved to the people by subsections (2) and (3) of this section are further reserved to the qualified voters of each municipality and district as to all local, special and municipal legislation of every character for their municipality or district."

Article VI, section 10, provides:

"The initiative and referendum powers reserved to the people by this constitution hereby are further reserved to the legal voters of every county relative to the adoption, amendment, revision or repeal of a county charter and to legislation passed by counties which have adopted such a charter."

The right of the voters of a municipality to refer to a vote of the qualified voters all matters of municipal *legislation* is guaranteed by the constitution. Additionally, Portland and Gresham have home rule charters that reserve to the voters of those cities the right of referendum in matters of municipal legislation.

ORS 454.280 provides:

"Notwithstanding the provisions of ORS Chapters 450, 451, and 454, or any city or county charter, *treatment works may be constructed by a municipality and financed by the sale of general obligation bonds,* revenue bonds or assessments against the benefitted property *without a vote in the affected*

*area or municipality or without being subject to remonstration procedure* when the findings and order are filed in accordance with ORS 454.310." (Emphasis supplied.)

ORS 454.285(3) provides that the governing body's proposal to construct sewer treatment works

"must be approved by a majority vote of the governing body and *does not require the approval of the residents or landowners in the affected area or municipality.*" (Emphasis supplied.)

Petitioners contend that the quoted statutory sections permit EQC to require a municipality to construct sewers without a vote in the affected area or without being subject to remonstrance procedure, that the local governing body's resolution initiating that process is legislative and that the statutes infringe on the right of referral and initiative provided by the constitution and home rule charters.

Petitioners characterize the adoption of the initiating resolution as legislative, "because it involves a decision to delegate or abrogate the further exercise of decision-making by the legislative body." We conclude that the initiating resolution does not constitute an act of delegation to EQC of decision making authority. Rather, the resolution merely triggers a process set out in the statutes. Whatever authority EQC has is derived from those statutes, not from a delegation of authority from the municipal body.

Even assuming, as petitioners contend, that the entire process described in the Act is exempted from the referendum procedure by the statute, we conclude that, in this context, the municipalities' acts of adopting resolutions pursuant to ORS chapter 454 are administrative, rather than legislative, and do not carry with them the right of initiative and referendum. *See Foster v. Clark,* 309 Or 464, 790 P2d 1 (1990); *State ex rel Allen v. Martin,* 255 Or 401, 465 P2d 228 (1970); *Amalgamated Transit v. Yerkovich,* 24 Or App 221, 545 P2d 1401, *rev den* (1976). The Supreme Court set out the test for distinguishing legislative from administrative matters in *Monahan v. Funk,* 137 Or 580, 584, 3 P2d 778 (1931):

"Acts, which are to be deemed as acts of administration and classed among those governmental powers properly assigned to the executive department, are those which are necessary to be done to carry out legislative policies and purposes already

declared, either by the legislative municipal body, or such as devolved upon it by the organic law of its existence. The form of the act is not determinative; that is, an ordinance may be legislative in character or it may be administrative[.]

"The crucial test for determining that which is legislative and that which is administrative is whether the ordinance is one making a law or executing a law already in existence[.]" (Citations omitted.)

The Supreme Court's recent opinion in *Foster v. Clark, supra,* is also helpful. The court addressed the question of whether Portland's renaming of a city street constituted municipal legislation, subject to reversal by the people through the initiative process. At the time the ordinance was enacted, Portland had regulations in effect governing the process for renaming streets. The court stated:

"Those [Portland City Code] sections contain a complete scheme for changing Portland city street names, including rules on petition forms, fees, review by various City officials, and final consideration by the City Council. This represents a completed legislative plan, requiring no further legislative contribution. Acts of renaming streets under the policies embodied in the plan thereafter become administrative acts, not legislation." 309 Or at 473. (Footnote omitted.)

The court stated, further, that "whether a particular municipal activity is administrative or legislative often depends not on the nature of the action but the nature of the legal framework in which the action occurs." 309 Or at 473.

We conclude, applying the test set out in *Monahan v. Funk, supra,* and followed in other cases, *Foster v. Clark, supra; Tillamook Peoples' Utility District v. Coates,* 174 Or 476, 483, 149 P2d 558 (1944); *Whitbeck v. Funk,* 140 Or 70, 74, 12 P2d 1019 (1932), that the cities' actions were administrative rather than legislative. The resolutions were adopted pursuant to a comprehensive administrative framework put in place by the Legislative Assembly. The Act represents a completed legislative plan, requiring no further legislative contribution. The cities made no new policy and adopted no new standards. They merely applied the policy set out in the statutes and followed procedures approved and set down by the state legislature. We conclude, therefore, that the municipal resolutions and the resulting EQC order were administrative, rather than legislative, that they do not constitute municipal

legislation and that the voters therefore were not entitled to the right of initiative and referendum.

ORS 454.280 authorizes the issuance of general obligation bonds for financing sewer treatment facilities without a vote of the electors in the affected area after EQC files findings and a final order pursuant to the Act. Petitioners contend that the statute violates the home rule charter of Multnomah County and, therefore, of the Constitution, because the charter requires voter approval of bond issues. However, none of the local governments has issued or has proposed to issue general obligation bonds to finance the construction of the treatment works subject to EQC's order. Therefore, the issue is hypothetical, and there is no a justiciable controversy on that question. We decline to address it.[3]

■ In their seventh assignment of error, petitioners contend that the Act is unconstitutional as applied by EQC, because EQC unlawfully excluded statutory alternatives for sewer development with the intention of frustrating referral rights. Petitioners contend that EQC's decision to rely on the factor of frustrating referral rights constitutes the adoption of a *de facto* administrative rule or policy without formal rulemaking.

EQC made findings that acknowledge that the statutory alternatives to ORS chapter 454 are less desirable in part, because they require the approval of the voters and the Portland Metropolitan Area Boundary Commission. Our reading of EQC's order leads us to conclude, however, that EQC did not rule out alternatives to chapter ORS 454 solely to avoid the need for voter approval. That factor was but one of several considered in determining that the method provided under the Act would be the most economical method of eliminating or alleviating the threat to drinking water. ORS

---

[3] Article XI, section 2, of the Oregon Constitution provides:

"Corporations may be formed under general laws, but shall not be created by the Legislative Assembly by special laws. The Legislative Assembly shall not enact, amend or repeal any charter or act of incorporation for any municipality, city or town."

Petitioners contend that the Act is unconstitutional, because it is a special law that amends a local charter, contrary to the limitation contained in that section. This argument is raised for the first time on appeal, and we decline to address it.

454.300(1). EQC's determination does not constitute a *de facto* administrative rule and is not otherwise unlawful.

Affirmed.