Argued and submitted January 19, reversed in part; otherwise affirmed June 21, petition for review allowed August 22, 1995 (321 Or 512)

# TEEL IRRIGATION DISTRICT,
*Respondent,*

*v.*

## The WATER RESOURCES DEPARTMENT
for the State of Oregon and
the Water Resources Commission
for the State of Oregon,
*Appellants.*

(93-0201; CA A81025)

898 P2d 1344

John T. Bagg, Assistant Attorney General, argued the cause for appellants. With him on the briefs were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

William Schroeder argued the cause for respondent. With him on the brief were Laura A. Schroeder and Schroeder Law Offices.

Reed D. Benson filed a brief *amicus curiae* for WaterWatch of Oregon, Inc.

Gail L. Achterman filed a brief *amicus curiae* for Oregon Water Resources Congress and Westland Irrigation District.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

WARREN, P. J.

Edmonds, J., concurring.

## WARREN, P. J.

The Water Resources Department and the Water Resources Commission (the department) appeal a circuit court judgment setting aside three orders that limit plaintiff Teel Irrigation District's (Teel) use of water under two water rights permits. ORS 183.484; ORS 183.500. We reverse, in part.

An overview of the law that governs water rights will provide a better understanding of our discussion of this case. Water rights in Oregon are based on appropriation for a beneficial use. A person seeking the right to beneficially use surface water must, before beginning any construction on diversion works, apply for and obtain a permit from the department for the appropriation. ORS 537.130. When the application is for a permit for irrigation, it must include "the legal subdivisions of the land and the acreage to be irrigated, as near as may be." ORS 537.140(1)(b). The permit allows the holder to divert water from its source and apply it to a beneficial use, and it sets the priority date for the water right in relation to other users. When the diversion is complete and the application to a beneficial purpose accomplished, the permit holder must submit a survey of the appropriation, called a final proof survey, to the department. ORS 537.230. If the department finds, based on the final proof survey, that the appropriation has been perfected in accordance with the law, the department will issue a water rights certificate. ORS 537.250. "The certificate represents the vested, perfected water right with a priority date of the time the original permit application was filed." Janet C. Neuman, "Oregon" in 6 *Waters and Water Rights* 704 (Robert E. Beck ed, 1994). Perfected water rights are appurtenant to the land, so that they travel with the land, unless the seller specifically withholds those rights on sale. *In re Waters of Deschutes River*, 134 Or 623, 286 P 563 (1930); ORS 540.510. A holder of a perfected water right can apply water to lands other than those to which the water right is appurtenant, by filing an alternate acreage petition with the department and obtaining its approval. ORS 540.520; ORS 540.570.

Turning to the facts of this case, Teel is an irrigation district located in Umatilla County, organized pursuant to ORS chapter 545, for the purpose of delivering irrigation

water to patrons within its district. The department is the state agency charged with administering water resources in this state. In 1957, Teel entered into an agreement with the United States Bureau of Reclamation, which constructed the McKay Dam and Reservoir, under which the Bureau agreed to deliver to Teel water stored in McKay Reservoir. In 1959, the department approved two applications by Teel for water rights permits and issued to Teel two permits allowing use of water. The permits, numbers 25920 and 25924, bear priority dates of 1955 and 1958, describe the acreage to be irrigated and provide that Teel may use water from two sources: streamflow from the Umatilla River and water stored in McKay Reservoir. The permits provide that Teel's use of water stored in McKay Reservoir is subject to the terms of the Bureau of Reclamation contract. The permits require Teel to complete construction of its diversion works and to apply water by 1961. Teel did not complete the diversion works by 1961. However, because Teel was exercising due diligence toward completion of the project, the department authorized extensions to allow completion by 1989.

Although the record is not entirely clear on this point, it appears that the 1957 contract with the Bureau of Reclamation either expired or was canceled sometime around 1980. Nonetheless, the Bureau of Reclamation continued to provide Teel with water from McKay Reservoir through the 1992 irrigation season. Since 1984, that water has been provided to Teel through a delivery contract Teel has with Westland Irrigation District (Westland). Westland has its own agreement with the Bureau of Reclamation for use of other water stored in McKay Reservoir.

During the time when Teel was developing its diversion system pursuant to the water rights permits, the department represented to Teel that the law allowed Teel to irrigate lands other than those specifically described in the permits. The department interpreted the Water Rights Act to allow use of water on substituted lands during development of the appropriation. According to department practice, a definitive determination of the lands to which the water right would be appurtenant would occur when the final proof survey showed what lands were actually being irrigated, and the water rights certificate would be issued based on that final proof survey.

In 1988 and 1989, the department began to prepare a final proof survey to ascertain what lands were being irrigated under Teel's permits, for the purpose of issuing water rights certificates.[1] The final proof survey apparently was completed sometime before December 1991.

In December 1991, the department sent a letter to Teel, informing it that the department was drafting water rights certificates for the two permits, and that the certificates would not allow use of water from McKay Reservoir,

"because there was no contract with the Bureau of Reclamation in force at the time of final proof, as required in the permits.

"This is notice to you that no stored water from McKay Reservoir will be allowed under permits 25920 and 25924, beginning with the 1992 irrigation season."

In 1992, the governor declared that a drought existed in Umatilla County, and the department temporarily authorized Teel to use water from McKay Reservoir, pursuant to an agreement with Westland to deliver the water. That agreement and the department's authorization expired at the end of the 1992 irrigation season.

In January 1993, the department issued proposed water rights certificates to Teel. After the proposed certificates were issued, Teel filed an alternate acreage petition, based on ORS 540.510 and ORS 540.570, seeking approval to change its place of use of some of the irrigation water.

On February 5, 1993, the department sent another letter to Teel, noting that the drought agreements had expired at the end of the 1992 irrigation season. The letter also said:

"This letter is further confirmation that you may not use McKay Reservoir water on lands under permits 25920 and 25924. I explained in my letter of December 18, 1991, the Department's legal position on this matter. Please find a copy attached."

---

[1] It is not clear why the department prepared the final proof survey. Before 1987, final proof surveys were prepared by the department. However, in 1987, ORS 537.230 was amended to provide that, upon completion of beneficial use, the permittee will prepare the final proof survey. It also appears that the department's final proof survey was premature; it was begun before Teel's time for completing the appropriation had expired.

On February 25, 1993, the department denied Teel's alternative acreage petition, because it concluded that approval would enlarge Teel's water rights. In March 1993, Teel filed a petition for judicial review and complaint for injunction, seeking review of the two February orders. Sometime after Teel filed its petition for judicial review, in response to Teel's assertion that Teel and not the department should have conducted the final proof survey, the department withdrew its final proof survey and proposed water rights certificates. It then gave Teel 60 days to complete its final proof survey.

Despite the department's previous representation that the law allowed Teel to apply water under the permits to acreage that was not described in the permits, in letters dated May 4 and 6, 1993 (the May 1993 order), the department informed Teel that

"the Department intends to regulate water use as specified in the applicable permits, which means that the use of water will be restricted to the place of use, as well as to other conditions of water use described in the permits."

On June 3, 1993, Teel filed an amended petition for judicial review and complaint for injunction. Its first claim alleged that the department erred in its February 25, 1993, order in denying its application for alternative acreage (alternative acreage); its second claim alleged that the department erred in its May 1993 order in restricting its use of Umatilla River water to those lands specifically described in its permits (place of use); and its third claim alleged that the department erred in its February 5, 1993, order in denying its right to use water stored in McKay Reservoir (stored water). It asked the court to set aside all three orders and to enjoin the department from enforcing the stored water and place of use limitations.

The trial court held a hearing and granted Teel's petition. It set aside all three orders and enjoined the department from enforcing the February 5 and May 1993 orders. The department appeals the trial court's judgment.

■ We begin by determining our standard of review. Although the pleading in the trial court in this case is denominated a "Petition for Review and Complaint for Injunction," it did not refer to the Administrative Procedures Act (APA).

On appeal, Teel acknowledges that judicial review of the department's orders is pursuant to the APA. The orders at issue are orders in other than a contested case. ORS 183.484 provides, in part, that, on review of an order in other than a contested case, the trial court:

"(4)(a) * * * may affirm, reverse or remand the order. If the court finds that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action, it shall:

"(A) Set aside or modify the order; or

"(B) Remand the case to the agency for further action under a correct interpretation of the provision of law.

"(b) The court shall remand the order to the agency if it finds the agency's exercise of discretion to be:

"(A) Outside the range of discretion delegated to the agency by law;

"(B) Inconsistent with an agency rule, an officially stated agency position, or a prior agency practice, if the inconsistency is not explained by the agency; or

"(C) Otherwise in violation of a constitutional or statutory provision.

"(c) The court shall set aside or remand the order if it finds that the order is not supported by substantial evidence in the record. Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding."

■ ORS 183.500 provides that an appeal of a circuit court judgment "shall be taken in the manner provided by law for appeals from the circuit court in suits in equity." The practical application of that standard is by no means clear:

"As the Supreme Court noted in *Oregon Env. Council v. Oregon State Bd. of Ed.*, 307 Or 30, 38, 761 P2d 1322 (1988), the provisions of the Administrative Procedures Act (APA) regarding the proper scope of review of orders in other than a contested case are the product of an earlier time in which circuit courts reviewed agency orders as matters in equity. The court noted that the practical operation of these provisions under the present version of the APA is not entirely clear." *Portello v. Oregon State System of Higher Education*, 122 Or App 314, 318 n 1, 858 P2d 145, *rev den* 318 Or 170 (1993).

Application of the standard of review is made particularly difficult in this case. Teel's petition never clearly identified the claims as arising under the APA and never couched the claims in terms of APA review. Instead, Teel pleaded and argued the case as a garden variety injunction case. Although counsel for the department at various times referred to the proceeding as one for judicial review under ORS 183.484 and told the court that such a proceeding was the exclusive means of reviewing the agency's action in this case, the trial court never referred to the standards of review set out in ORS 183.484 and clearly viewed the case as one for an injunction. Nor did the court address each claim separately. The court's failure to address the claims separately or to identify APA bases for its determinations makes it more difficult for us to ascertain those bases from the court's opinion. Nonetheless, we are bound to apply the standard of review provided in the APA, that is, to determine whether the trial court correctly applied the standard of review under ORS 183.484. We understand that standard to mean that we must determine whether the trial court reached the correct decision under ORS 183.484. *United Citizens v. Environmental Quality Comm.*, 104 Or App 51, 54, 799 P2d 665 (1990), *rev den* 311 Or 151 (1991). *See Portello*; *Keeton-King Construction v. State of Oregon*, 105 Or App 41, 802 P2d 711 (1990), *mod* 106 Or App 663, 809 P2d 708 (1991); ORS 183.500.

In its first assignment of error, the department asserts that the trial court erred in setting aside the February 25, 1993, order, which denied Teel's alternate acreage petition. The department denied the petition because it found that the approval would result in an expansion of water rights, in violation of ORS 540.510 and ORS 540.570. It found that using stored water from McKay Reservoir would be an expansion of permitted use, because Teel's permits allowed use of reservoir water only pursuant to the contract with the Bureau of Reclamation, and that contract had expired or been canceled, and because the petition did not indicate that irrigated lands would be left dry in exchange for irrigating the alternate acreage, as required by rule.

Teel argued to the trial court that the department should have dismissed the petition for alternate acreage rather than deny it. It asserted that there must be a final

proof survey or certificated water right before the department can entertain an alternate acreage petition. According to Teel, the department's final proof survey had been withdrawn, and therefore there was no factual basis for the petition. The trial court set aside the department's denial without explanation, other than saying that the department had erroneously concluded "that a final proof survey was issued resulting in an incorrect process in alternative acreage petitions." We understand that ruling to be a determination that the department erred in making a decision on the petition, when the final proof survey on which the petition was based had been withdrawn.

On review, the department asks us to reverse the trial court "to the extent the [trial] court's decision may be understood to find the director lacked a legal basis upon which to deny the petition * * *." It argues that its denial was correct, because ORS 540.570(3) requires denial of an alternate acreage petition if the change would, *inter alia*, result in an enlargement of the water right. Because the petition relied on a source of water to which Teel was not entitled, and it did not show that irrigated acreage would be left dry in exchange for irrigating other acreage, the department argues that its denial was correct on the merits.

Teel asserts that the trial court correctly set aside the denial, because once the final proof survey was withdrawn, the only option open to the department was to dismiss the petition. Its argument is based on the proposition that ORS 540.510 and ORS 540.570, on which Teel relied when it filed the petition, apply only when there is a final proof survey, and here the final proof survey has been withdrawn.[2] It argues

---

[2] ORS 540.510(4) provides:

"Pursuant to the provisions of ORS 540.570, any water used under a permit or certificate issued to a district may be applied to beneficial use on lands within the district to which the right is not appurtenant."

ORS 540.570 provides, in part:

"(1) Upon compliance with subsection (2) of this section, a district may deliver water appurtenant to any land within the legal boundaries of the district, to an equal acreage elsewhere within the legal boundaries of that district.

"(2) When a district or an owner or an owner's agent within a district who is subject to the charges or assessments of the district wishes to use water on alternate acreage within the district, if the district has approved the owner's request, the district shall notify the commission of that intent at least 60 days before the beginning of the irrigation season. * * *

that, by withdrawing the final proof survey, the department deprived itself of the authority to make a decision on the merits.

■■ There are two flaws in Teel's argument. First, the petition that Teel filed expressly relied on ORS 540.510 and ORS 540.570, which it now argues are inapplicable. Having relied on those statutes in filing the petition, Teel can hardly complain that the department relied on those statutes in ruling on the petition. The more fundamental flaw is that its argument that the department could not rule on the petition because there was no final proof survey is based on a faulty premise. When the department issued its order denying the petition, there was a final proof survey, which the department had prepared and on which the proposed water rights certificates had been based. The final proof survey was not withdrawn until sometime *after* the February 25 order was issued. Thus, even assuming that Teel is correct that there must be a final proof survey before the department can entertain a petition for alternate acreage, here there was such a survey at the time the department ruled on it.[3] Accordingly, Teel's argument that the department did not have authority to rule on the merits of the petition is without a factual foundation.

■ Teel makes no persuasive argument that the department's order denying the alternate acreage petition was wrong on the merits. Accordingly, the trial court erred in setting aside the February 25, 1993, order denying Teel's alternate acreage petition.

---

"(3) The commission may deny the request to use water on the alternate acreage if such use would interfere with existing water rights or result in enlargement of the water right."

According to Teel, water is not appurtenant to land until a final proof survey has been completed. Therefore, until there is a final proof survey, there is no basis for an alternate acreage petition. We need not address Teel's understanding of the law on this point.

[3] Teel does not argue that the final proof survey was void *ab initio* or that its withdrawal was *nunc pro tunc* to the date of its completion. Instead, Teel proceeds on the erroneous premise that the survey was withdrawn before the department made its decision to deny the petition. We emphasize, again, that our discussion of Teel's arguments is not intended to endorse any view about when a water right becomes appurtenant to land, such that the right is subject to an alternate acreage petition under ORS 540.510(4) and ORS 540.570.

In its second and third assignments of error, the department challenges the trial court's ruling on Teel's second and third claims. On the second claim, the trial court set aside the May 1993 order limiting place of use to acreage described in the permits. On the third claim, the court set aside what Teel argued was an order contained in the department's February 5, 1993, letter regarding Teel's right to use water stored in McKay Reservoir. The department's second assignment asserts that the trial court erred in failing to dismiss Teel's second and third claims for relief on various procedural grounds. Its third assignment challenges the merits of the trial court's determination to grant the relief requested in the two claims. We will address the assignments relating to the third claim first.

Teel's third claim for relief sought to have the trial court set aside and enjoin enforcement of the department's February 5, 1993, "order," which said:

> "This letter is further confirmation that you may not use McKay Reservoir water on lands under permits 25920 and 25924. I explained in my letter of December 18, 1991, the Department's legal position on this matter. Please find a copy attached."

The department argues first that the petition for judicial review of this agency action was not timely filed. It argues that the final agency action prohibiting Teel's use of McKay Reservoir water occurred when it sent its December 18, 1991, letter, which stated that Teel was not entitled to use McKay Reservoir water under permits 25290 and 25294, beginning with the 1992 irrigation season. According to the department, because that was a final order, it could only be reviewed if a petition for judicial review was filed within 60 days from the date that order was served. Teel did not file any request for judicial review of the December 1991 order. The department asserts, therefore, that Teel cannot attack the substance of that order by seeking review of the department's "further confirmation" of that order in the February 5, 1993, letter.

Teel responds that the department did not raise that argument below, and we ought not to consider it for the first time on appeal. It argues that, if we do consider it, the 1991 letter was not a final order because (1) it was written by a person lacking authority to act for the department; and

(2) the letter was merely tentative and preliminary, and did not preclude further agency action. According to Teel, final agency action on the stored water issue did not occur until February 5, 1993, when the department sent the letter confirming that Teel would not be permitted to use water from the McKay Reservoir.[4]

We first reject Teel's argument that the department did not raise the timeliness of the petition for review of the February 5, 1993, letter. In its Hearing Memorandum, the department specifically argued that the December 18, 1991, letter was a final, appealable order, and that the February 5, 1993, letter confirming that order was not a new, reviewable order. The error was preserved.

We agree with the department that Teel may not seek review of the February 5, 1993, letter. Final orders are subject to judicial review. ORS 183.480(1). An "order" is "any agency action expressed orally or in writing directed to a named person or named persons, other than employees, officers or members of an agency." ORS 183.310(5)(a). A "final order" is a

"final agency action expressed in writing. 'Final order' does not include any tentative or preliminary agency declaration or statement that:

"(A) Precedes final agency action; or

"(B) Does not preclude further agency consideration of the subject matter of the statement or declaration." ORS 183.310(5)(b).

Petitions for review of orders in other than a contested case must be filed within 60 days following the date the final order is served. ORS 183.484(2).

Teel argues that the December 1991 letter was not a final order, first because that letter was written by a watermaster in the employ of the department, rather than by the department itself. We disagree. ORS 540.045 provides that the watermaster's duties include regulating distribution of water in accordance with users' existing water rights of

---

[4] Teel does not argue that, if the final agency action occurred in 1991 when the department sent its letter to Teel, the February 5, 1993, letter is nonetheless a final, appealable order.

record. Teel does not argue that the December 1991 letter exceeded that grant of authority or point to any statute that requires a watermaster's orders to be approved by any other official of the department. We are not aware of any such limitation on the watermaster's duties. Further, Teel's argument is internally inconsistent. Teel claims that the December 1991 letter is not a final order because it was written by the watermaster, yet it also claims that the February 5, 1993, letter, written by the same person acting in the same capacity, *is* a final, reviewable order. It cannot have it both ways. Teel's argument that the 1991 letter is not an order of the department fails.

■ Teel next argues that the December 1991 letter was not a final order because it was preliminary agency action, which anticipated issuance of a final draft. The letter was preliminary in some respects. It said that the department was preparing draft certificates for Teel's permits, and that the permits would describe the extent and location of allowed acreage and identify the source and amount of water. If that were all that it said, we might agree that the letter was preliminary. However, the letter unequivocally prohibited any further use of stored water from McKay Reservoir: "This is notice to you that no stored water from McKay Reservoir will be allowed under permits 25920 and 25924, beginning with the 1992 irrigation season." That was an agency action, expressed in writing, directed to the individual irrigation district. It did not contemplate or allow any further agency action regarding Teel's right to use McKay Reservoir water and was a final order.

Because the December 1991 order was final, Teel had 60 days from the date that order was served in which to challenge it. Teel did not do that. Therefore, the department's decision to disallow use of McKay Reservoir water, reflected in the 1991 order, remains in effect. The February 5, 1993, letter merely reminded Teel of the department's 1991 order. The 1993 letter was not an order, because it was not an agency action. Teel could not obtain review of the decision to prohibit use of McKay Reservoir water under permits 25290 and 25294 by seeking review of the February 5, 1993, letter. *See Carnine v. Oregon State Textbook Comm.*, 62 Or App 344, 660 P2d 201, *rev den* 295 Or 259 (1983).

.

Because the February 5, 1993, letter was not an order subject to judicial review, the trial court had no authority to set it aside. The court's action setting it aside had no substantive effect, however, because the December 1991 order remained in effect. Nonetheless, because the court did not have authority to set aside the letter, we reverse that portion of the court's judgment. In light of our conclusion that Teel did not timely seek review of the agency action prohibiting use of McKay Reservoir water pursuant to permits 25290 and 25294, we do not address any of the arguments about the correctness of that action.[5]

The department also argues that the second claim, seeking review of the May 1993 order limiting use of water to acreage specifically described in the permits, should have been dismissed as not timely filed. Teel correctly argues that the department did not raise that issue before the trial court. Ordinarily, that failure of preservation would preclude our review. However, because a timely petition for circuit court review is jurisdictional, we address it even when raised for the first time on appeal.

■ The department argues that we may not review the May 1993 order, because the final agency action determining permissible places of use occurred when the department issued the permits in 1959. According to the department, the permits specifically identified the places where water could be used under the permits, and therefore any challenge to place of use should have been made by seeking review of the permits. The permits, issued in 1959, set out in detail a "description of land to be irrigated or place of use." According to to the testimony, at the time the permits were issued, the department's regulation of permitted water use was based on its view that the law allowed water under the permits to be used on lands not described in the permits. It had long allowed changes in place of use during the development of an irrigation appropriation, with a final determination of place

---

[5] We do not address the arguments that the department action somehow affected the agreement between Westland and Teel for delivery of water, or any agreement between the Bureau of Reclamation and either Teel or Westland. The December 1991 order prohibits Teel's use of McKay Reservoir water under permits 25290 and 25294. Whether Teel may have any right to use McKay Reservoir water pursuant to any other authority was not before the trial court and is not before us on review.

of use left to the final proof survey and the issuance of a certificate of water right. Under that view of the law, the permits did not provide a final determination of where water could be used under the permits. Because at the time they were issued the permits were not considered final determinations regarding allowed places of use, the permits were not final orders with regard to that issue. The department's May 1993 letters expressed for the first time the department's view that Teel could apply water only to those lands specifically described in the permits. That was a final agency action and is subject to judicial review. Teel's second claim, challenging the May 1993 order, was timely.

We turn then to the merits of the second claim. The department assigns error to the trial court's ruling setting aside the May 1993 order limiting place of use. It argues that the trial court was wrong in concluding that (1) the department was estopped from limiting the place of use, because the department's past practice had allowed changes in place of use; (2) the department exercised discretion in a manner inconsistent with prior agency practice; and (3) the department's order was not supported by substantial evidence. Teel responds that the court correctly found that the department was estopped, and that the court correctly concluded that the department's order reflects an erroneous interpretation of ORS 537.140(1)(b). It does not respond to the department's other arguments. In reply, the department argues that the 1993 order reflects a correct interpretation of the law, and that the department's prior interpretation had been incorrect.

The trial court's opinion does not expressly specify any basis under ORS 183.484 for setting aside the May 1993 order. Regarding place of use, the trial court concluded:

"The court finds that [the] Commission cannot regulate Teel's place of use in a haphazard [manner]. The law and policy of the State of Oregon has supported adjustments in the application of water. *See Smyth v. Jenkins*, 208 Or 92[, 299 P2d 819] (1956). To regulate the use of the water differently than it is currently applied would frustrate the intent of the certification processes noted above. Several of the witnesses all testified that the certification process would correct deficiencies in the boundary. Changes in the location of water uses are expected and allowed under Oregon law.

ORS 537.140(1)(b) contains the critical language 'if for agricultural purposes, it shall give the legal subdivisions of the land and the acreage to be irrigated, as near as may be.'

"The court accepts the testimony of the witnesses for Teel that [']as near as may be['] modifies both clauses 'legal subdivisions of lands and acreage to be irrigated.' It appears to be the same as the original 1917 language. It appears to this court that that is the legislative intent from 1917 to present. Under ORS 537.140(1)(b) Teel is allowed to substitute acreage for other acres of equal value. See *Wilbur v. Wheeler*, 273 Or 85[5, 543 P2d 1052] (1975).

"Teel's projected intention is consistent with the law. It has been the rule in this state and this county since *In Re Waters of Umatilla River*, 88 Or 376[, 168 P 922] (1918).

"Teel has maintained a continuing intention to irrigate the acreage at issue. Commission's past practices have established that districts are authorized to apply water to lands that are different than those in the permit. There is currently no process to make those changes in midstream until the final certificate is issued. This Court finds that if the State wishes to change its rules now, it must go through the administrative standards. See *Sun Ray Drive-In Dairy, Inc. v. Oregon Liquor Control Commission*, 16 Or App 63[, 517 P2d 289] (1973)."

We understand those conclusions to state three bases for setting aside the May 1993 order: that (1) the department's long-standing interpretation of the law was reasonable and was consistent with the Supreme Court interpretation that ORS 537.140(1)(b) allows substitution of lands under a permit, and therefore the department's current interpretation of the law as prohibiting that substitution is erroneous; (2) the department is estopped to limit Teel's place of use of its water right because of representations the department has made that changes in place of use would be allowed under the permits; and (3) the department's past practice of allowing changes of place of use constitutes a rule, which the department cannot change without following proper rulemaking procedures.

We need not address whether the trial court was correct that the department's order was based on an erroneous interpretation of the law or whether the department could be estopped from changing its interpretation, because

we conclude that the department failed to challenge the final basis for the court's decision, that the department's long-standing interpretation of the law is a rule, which cannot be changed without following rulemaking procedures.

The department challenges the trial court's decision only on the first two of its three bases. It does not address the trial court's determination that:

> "Commission's past practices have established that districts are authorized to apply water to lands that are different than those in the permit. * * * This Court finds that if the State wishes to change its rules now, it must go through the administrative standards. See *Sun Ray Drive-In Dairy, Inc. v. Oregon Liquor Control Commission*, 16 Or App 63[, 517 P2d 289] (1973)."

Instead, it argues:

> "The district's arguments may also be seen as an asser-tion the department's determination of place of use should be set aside because the department position is different than that taken in the past and the inconsistency was not explained. This argument is misplaced. The department's determination of the legal place of use and source of water was not an exercise of discretion. The matter was one of application of the law. The matter did not involve (or permit) agency discretion. As such, the agency's prior mistaken interpretation of the law is not relevant and not grounds to remand the determination to the department." (Footnotes omitted.)

That argument is not responsive to the trial court's decision. The court did not find that the department had exercised its discretion in a way that was inconsistent with prior agency practice. Instead, it found that the department's past practice constituted a rule, and that rule could not be changed without complying with rulemaking procedures.[6] Accordingly, even if the department is correct that the trial court erred on the two grounds it does assert, it is nonetheless not entitled to reversal, because it does not challenge the third basis for the decision. We will not address whether the

---

[6] The trial court said that the department "must go through the administrative standards." Its citation to *Sun Ray Dairy v. OLCC*, 16 Or App 63, 517 P2d 289 (1973), confirms that it was referring to rulemaking procedures.

trial court's determination that past agency practice constitutes a rule is correct, because the department does not argue that the court erred in making that determination.[7] We therefore affirm the trial court's decision to set aside the May 1993 order.

 Because the trial court did not err in setting aside the May 1993 order, we next address the department's argument that an injunction is not an available remedy under the APA. We need not decide whether the trial court has the authority under ORS 183.486 to issue an injunction against the department in a proceeding for judicial review under ORS 183.484, because even if the court does have that authority, we agree with the department that an injunction is unwarranted in this case. As the Supreme Court said in *Burke v. Children's Services Division*, 288 Or 533, 548, 607 P2d 141 (1980):

> "We will not assume that the defendant agencies of the State of Oregon will, in the absence of an injunction, refuse to follow the law as we have stated it."

Similarly here, we will not assume that the department will refuse to follow the law by attempting to enforce an order that has been set aside on judicial review. Teel attempts to support the injunction by pointing to the trial court's finding that the watermaster testified that, unless the court issues an order to the contrary, he will follow the order that is the subject of the dispute. Teel does not cite any transcript reference where we could review precisely what the watermaster said. In the absence of clear evidence that the agency officials intend to disobey the court's order, we will not presume that they will do so. The trial court erred in entering an injunction against the department.

Judgment setting aside February 5, 1993, and February 25, 1993, orders and entering injunction on petitioner's second and third claims for relief reversed; otherwise affirmed.

---

[7] At oral argument, the court asked whether past agency practice could be changed only through rulemaking. Counsel for the department responded in the negative. That response cannot be read as urging, as a basis for reversal, that the trial court erred in holding that past agency practice constituted a rule that could be changed only through rulemaking. Because the issue is not before us, we express no opinion about whether the department's practice did or could constitute a rule. *See* ORS 183.310(8).

**EDMONDS, J.,** concurring.

This case could have tragic consequences as a result of the department's decisions. Farmers in the Teel Irrigation District (Teel) could find themselves without adequate irrigation water with which to cultivate and harvest their crops. The result could be severe financial hardship resulting in farm families losing their land and their livelihood.[1]

It is often perceived by those living east of the Cascade Mountains that the "law makers and the bureaucrats" west of the mountains are insensitive to the demands of trying to scratch out a living from the land in the more arid portions of our state. Whatever the correctness of that perception, that is not the motivation of this court. Teel's dilemma is one of its own making. Our holding is compelled because Teel did not seek timely review of the December 1991 letter that expressly informed it that the department was prohibiting it from using water from McKay Reservoir, water that it had been using since the mid-1950's. There is an old common law rule that sums up what has happened to Teel. "The law aids the vigilant, not those who sleep on their rights." Under these facts, we lack the ability to consider the merits of the district's position. If there is anything good that can come out of this case, perhaps it is that other districts will be reminded about the requirements of promptly seeking review under the Administrative Procedures Act.

---

[1] The trial court found that denial of the use of waters from McKay Reservoir could result in a loss of approximately $700,000 to the farmers in the district.