Argued and submitted January 8, decision of the Court of Appeals vacated in part as moot, otherwise affirmed; judgment of the circuit court affirmed in part and reversed in part July 25, reconsideration denied October 8, 1996

TEEL IRRIGATION DISTRICT,
*Petitioner on Review,*

*v.*

The WATER RESOURCES DEPARTMENT
of the State of Oregon
and The Water Resources Commission
for the State of Oregon,
*Respondents on Review.*

(CC 93-0201; CA A81025; SC S42457)

919 P2d 1172

William F. Schroeder, of Schroeder Law Offices, Portland, argued the cause for petitioners on review. Laura A. Schroeder filed the briefs.

John T. Bagg, Assistant Attorney General, Salem, argued the cause for respondents on review. With him on the briefs were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Reed D. Benson, Portland, filed a brief on behalf of *amicus curiae* WaterWatch of Oregon, Inc.

Gail L. Achterman, Portland, filed a brief on behalf of *amici curiae* Oregon Water Resources Congress and the Westland Irrigation District.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, Graber, and Durham, Justices.**

VAN HOOMISSEN, J.

** Unis, J., retired June 30, 1996, and did not participate in this decision.

## VAN HOOMISSEN, J.

Plaintiff, Teel Irrigation District (Teel), petitioned for review of a Court of Appeals' decision that reversed in part a circuit court judgment that set aside three orders issued by defendants, Oregon Water Resources Commission and Oregon Water Resources Department (the department), and enjoined the department from effecting those orders. ORS 183.484; ORS 183.500. *Teel Irrigation Dist. v. Water Resources Dept.*, 135 Or App 16, 898 P2d 1344 (1995).

On review, we examine three issues: First, did the department have authority to deny Teel's alternate acreage petition, in which Teel requested that it be allowed to apply water to land not described in its water rights permits? Second, did the circuit court have jurisdiction to consider Teel's petition for judicial review of the department's order prohibiting Teel's use of McKay Reservoir (McKay) waters? Third, did the circuit court err in setting aside a department order restricting Teel's use of water to areas specified in the permits and in granting Teel injunctive relief? On the first issue, we vacate the Court of Appeals' holding as moot. On the second issue, we affirm the Court of Appeals' holding that the circuit court lacked jurisdiction to consider Teel's petition. 135 Or App at 27-29. On the third issue, we affirm the Court of Appeals' affirmance of the circuit court's decision to set aside the order and the Court of Appeals' reversal of injunctive relief. *Id.* at 33.

Teel is organized pursuant to ORS chapter 545 (establishing and regulating irrigation districts) for the purpose of delivering water to irrigators within its district. The Water Resources Commission and the Water Resources Department set policy and regulate the appropriation of ground and surface water in this state. *See* ORS chapter 536 (establishing Water Resources Administration).

An inquiry into the issues requires a brief overview of Oregon's water laws, particularly the laws pertaining to the appropriation of water for a beneficial use. Oregon's current scheme of ground and surface water allocation is rooted in the doctrine of prior appropriation for a beneficial use.[1]

---

[1] Before the enactment of the water code in 1909, Oregon recognized both riparian and appropriative rights. Under a pure riparian system, only persons

Under this doctrine, a person may acquire an appropriative right on a "first come, first served" basis by diverting water and applying it to a beneficial use. *See* William Goldfarb, *Water Law*, 21-25, 32-41 (3d ed 1991) (discussion of riparian rights and prior appropriation doctrine). Generally, any person intending to acquire a right to appropriate surface water first must apply to the department for a permit to make the appropriation. ORS 537.130. The application for the permit must include the following information: (1) the source of the water supply; (2) the nature and amount of the proposed use; (3) the location and description of the proposed diversion; (4) the time within which the applicant proposes to begin construction; (5) the time required for completion of the construction; and (6) the time required for the complete application of the water to the proposed use. ORS 537.140(1)(a). "If for agricultural purposes, the application [also] shall give the legal subdivisions of the land and the acreage to be irrigated, as near as may be." ORS 537.140(1)(b).

Subject to various conditions that are not relevant in this case, the department must approve a proper application that contemplates the beneficial use of water, unless the proposed use conflicts with existing water rights. ORS 537.160(1). The permit allows the permittee to begin construction of the diversion project and the appropriation of water. Generally, the permittee must begin construction within one year of the approval of the application and must complete the construction within a reasonable time as determined by the department, not to exceed five years from the approval. ORS 537.230(1). For good cause shown, the department may allow extensions beyond the five-year limitation. ORS 537.230(2).

■        The permit itself does not represent a perfected and vested water right. *See Green v. Wheeler*, 254 Or 424, 430-31, 458 P2d 938, *cert den* 397 US 990 (1970) (describing perfection of water rights). The water right is perfected when the water actually is put fully to a beneficial use. *See* Janet C.

owning land abutting a natural watercourse possess a right to use the water. A riparian owner had the right to divert water for any purpose, so long as the use did not unreasonably interfere with the uses of other riparians. The 1909 code abolished unused riparian rights. *See* Janet C. Neuman, "Oregon," in 6 *Waters and Water Rights*, 699-700 (2d ed 1994) (brief history of Oregon water law).

Neuman, "Oregon," in 6 *Waters and Water Rights*, 704 (2d ed 1994) (discussing principle). Perfected water rights are appurtenant to the land, so that they travel with the land, unless the seller specifically withholds those rights on sale. ORS 540.510. A holder of a perfected water right may apply water to lands other than those to which the water right is appurtenant, by filing an alternate acreage petition with the department and obtaining its approval. ORS 540.520; ORS 540.570.

Once the permittee has completed the construction and has begun applying the water to a beneficial use, a "final proof survey" is prepared as "proof" of a perfected water right. Although, historically, such surveys were prepared by the department, the 1987 legislature amended ORS 537.230 to require the permittee to hire a certified water right examiner to survey the appropriation. Or Laws 1987, ch 542, § 4. Once the department finds, based on the final proof survey, that the permittee has appropriated the water for a beneficial use in accordance with the law, the department issues a water right certificate to the user. ORS 537.250. The certificate shows the user's priority, dated to the time of the original application, the extent and purpose of the right, and a description of the land to which the water is appurtenant. ORS 537.250. The certificate represents a vested, perfected water right that continues so long as the water is applied to a beneficial use in accordance with the terms of the certificate, subject to loss by nonuse and other events. ORS 537.250(3); ORS 540.610.

In the present case, in 1959, the department issued to Teel two permits for the appropriation of water from the Umatilla River and McKay.[2] The permits required Teel to complete construction work for the water diversion by October 1, 1960, and to achieve actual application of the permitted water by October 1, 1961. The permits also provided that

"the amount of water allowed herein, together with the amount secured under any other right existing for the same lands shall not exceed the limitation allowed herein; and is

---

[2] The United States Bureau of Reclamation constructed the McKay Dam and Reservoir. In 1957, Teel entered into an agreement with the Bureau under which the Bureau agreed to deliver to Teel water stored in McKay Reservoir.

subject to the terms of contract No. 14-06-100-1458, dated December 3, 1957 between the United States of America through the Bureau of Reclamation and [Teel] * * *."

The contract between Teel and the Bureau of Reclamation, to which the permits refer, allowed Teel to appropriate water from McKay pursuant to federal laws. That contract provided in part:

"Unless water is diverted for the year 1960, this contract shall be terminated and all rights of [Teel] thereunder shall cease."

By 1960, Teel had not applied the permitted water to a beneficial use. Thereafter, the department extended its permits through 1965, based on Teel's showing of due diligence in working toward completion of the construction. *See* ORS 537.230(2), ORS 539.010(5) (authorizing extensions for good cause). The department granted Teel six more extensions, through 1989.

In 1980, the Bureau stated in a letter to Teel that, because of Teel's inability "to finance and construct needed water conveyance and distribution facilities," it considered the contract for the use of stored water from McKay to be terminated. Nevertheless, the Bureau continued to provide Teel with McKay water through the 1992 irrigation season. In about 1984, Teel began receiving McKay water as a result of a series of delivery contracts that Teel had with Westland Irrigation District, a neighboring district.[3] In 1988 and 1989, the department began to prepare a final proof survey map to show the actual use of the permitted water for the purpose of issuing water rights certificates.[4]

---

[3] During the time when Teel was developing its diversion system pursuant to the water rights permits, the department represented to Teel that the law allowed Teel to irrigate lands other than those specifically described in the permits. The department interpreted the Water Rights Act to allow use of water on substituted lands during development of the appropriation. According to department practice, a definitive determination of the lands to which the water right would be appurtenant would occur when the final proof survey showed what lands were actually being irrigated, and the water rights certificate would be issued based on that final proof survey.

[4] In view of the fact that the 1987 legislature amended ORS 537.230 to require the permittee to hire a certified water examiner to survey the appropriation, it is not clear why the department began to prepare a final proof survey map.

In December 1991, the department's regional water-master wrote a letter to Teel as follows:

"The Water Resources Department is preparing draft certificates for permits 25920 and 25924, in the name of Teel Irrigation District. The certificates will describe the extent and location of the acreage to be allowed in the final certificates. The source and amount of water are also identified in the certificates.

"Both permits identify two sources of water, the Umatilla River and storage from McKay Reservoir. The certificates will allow direct flow from the Umatilla River. The stored water from McKay Reservoir will not be allowed, because there was no contract with the Bureau of Reclamation in force at the time of the final proof, as required in the permits.

*"This is notice to you that no stored water from McKay Reservoir will be allowed under permits 25920 and 25924, beginning with the 1992 irrigation season.*

"If you have any questions about the process or policy concerning the perfection of water rights, in particular the Teel water rights, please call me." (Emphasis added.)

In 1992, the Governor declared that a drought condition existed in Umatilla County. As a result, the department temporarily authorized Teel to use Westland water on Teel lands. Following the drought emergency, source of water and place of use for both districts would be under the terms of the existing permits.

In June 1992, the department sent Teel drafts of the final proof survey maps. The letter accompanying the maps stated that Teel would have an opportunity to identify any errors or omissions on the maps.

The department completed its final proof survey in January 1993. Also, in January 1993, after making some slight changes in the drafts, the department issued proposed water rights certificates to Teel. The notice that accompanied the proposed certificates advised Teel that, if it did not agree with the proposed certificates or map, it could petition for reconsideration within 60 days. Teel petitioned for reconsideration within that 60 days. That petition was never resolved, however.

In February 1993, Teel filed an alternate acreage petition with the department, requesting that Teel be allowed to irrigate lands not described in its original permits. *See former* ORS 540.510 and ORS 540.570 (1991) (use of water on acreage not specified in permit or certificate).

On February 5, 1993, the department sent another letter to Teel noting that the drought agreement had expired at the end of the 1992 irrigation season. That letter also stated:

> "This letter is further confirmation that you may not use McKay Reservoir water on lands under permits 25920 and 25924. I explained in my letter of December 18, 1991, the Department's legal position on this matter."

On February 25, 1993, the department denied Teel's alternate acreage petition, on the ground that approval would result in an "enlargement" of Teel's water right. *See former* ORS 540.570(3) (1991) (grounds for denial of alternate acreage petition).

In March 1993, Teel filed a petition for judicial review and complaint for injunction in the proceeding, seeking review of the department's February 5, 1993, letter denying Teel's use of McKay water and of the department's February 25, 1993, order denying Teel's alternate acreage petition.

Despite the department's previous representation that the law allowed Teel to apply water under the permits to acreage that was not described in the permits, in letters dated May 4 and 6, 1993 (the May 1993 order), the department informed Teel that

> "the [d]epartment intends to regulate water use as specified in the applicable permits, which means that the use of water will be restricted to the place of use, as well as to other conditions of water use described in the permits."

In June 1993, Teel filed an amended petition for judicial review and complaint for injunction. Its first claim alleged that the department erred in its February 25, 1993, order in denying its application for alternate acreage; its second claim alleged that the department erred in its May 1993 order in restricting its use of Umatilla River water to those

lands specifically described in its permits; and its third claim alleged that the department erred in its February 5, 1993, order in denying its right to use McKay water. It asked the court to set aside all three "orders" and to enjoin the department from enforcing the stored water and place of use limitations.

Before trial, the department withdrew its proposed certificates and final proof survey. At trial, Teel argued that, because the department had withdrawn its proposed certificates and final proof survey, it no longer had the authority to deny Teel's alternate acreage petition but, instead, should have dismissed it. Teel also argued that the department had no authority to deny Teel's use of McKay water. The trial court set aside the department's February 5, February 25, and May 1993 orders and enjoined the department from enforcing its February 5 and May 1993 order. The department appealed.

The Court of Appeals reversed, holding that the department had the authority to deny Teel's alternate acreage petition and, therefore, that the circuit court had erred in setting aside the department's February 25 order denying Teel's petition. *Teel*, 135 Or App at 23-25. The court further held that the department's February 5, 1993, letter was *not* a final order subject to judicial review, because it simply reminded Teel of the department's December 18, 1991, order denying Teel's use of McKay water. *Id.* at 27-29. Accordingly, the court reversed that portion of the judgment.

The Court of Appeals also held that the department's December 18, 1991, letter was a final order and that, because Teel had not petitioned for judicial review of that order within 60 days of service as required by ORS 183.484(2), it was time barred from seeking review in the circuit court. *Id.* at 28. Finally, the court held that the circuit court did not err in setting aside the department's May 1993 order, because the department did not argue that one basis for the circuit court's decision was wrong. *Id.* at 31-33. The court also held that an injunction is unwarranted in this case and that the circuit court erred in entering an injunction against the department. *Id.* at 33. We allowed Teel's petition for review.

## TEEL'S ALTERNATE ACREAGE PETITION

Teel argues that, once the department withdrew its proposed certificates and final proof survey, the department lacked statutory authority to consider Teel's alternate acreage petition on the merits and, therefore, that the department should have dismissed the petition.

The department responds that, under the statutes existing at the time of Teel's petition, both a permittee and a holder of a perfected water right could petition to have water delivered to areas other than those specified in the permit or certificate. *See former* ORS 540.510(1) and (4); ORS 540.570 (1991) (providing for use of water on lands to which the right is not appurtenant). Therefore, the department argues, it had the authority to consider Teel's petition on the merits, whether or not Teel had a perfected water right. Moreover, the department argues, its administrative rules allow a permittee with an unperfected water right to file an alternate acreage petition. OAR 690-21-030.

We need not consider the merits of the parties' arguments, because we conclude that the issue of the department's authority to consider Teel's alternate acreage petition on the merits is moot. Teel filed its alternate acreage petition in February 1993, seeking a modification of its water use *for the 1993 irrigation season*. That petition, if granted, would have given Teel the right to deliver water to alternate acreage for the 1993 irrigation season only. *See former* ORS 540.570(5) (1991) (so providing). The question whether Teel's petition should have been denied or dismissed lost any significance after the 1993 season. Thus, we do not decide whether the circuit court erred in setting aside the department's February 25, 1993, order denying Teel's alternate acreage petition. We hold that that issue is moot.[5]

---

[5] We understand Teel to suggest that the denial of its alternate acreage petition might preclude the grant of a later alternate acreage petition. However, Teel cites no authority and makes no persuasive argument for the proposition that the mere denial of a petition would be the basis of a refusal to consider or deny a later alternate acreage petition.

The 1995 legislature substantially changed the law regarding temporary transfers of water use. Or Laws 1995, chs 368 & 554. Therefore, the propriety of the department's conduct under the law in 1993 has no significance for these parties in the future.

## McKAY RESERVOIR WATER

Teel contends that the Court of Appeals erred in concluding that the December 18, 1991, letter prohibiting Teel's use of McKay water was a final order and that Teel was time-barred from challenging it in circuit court. Teel argues that the December 18 letter was not a final order, because it was written by a watermaster who lacked authority to issue final orders and because the letter itself was tentative or preliminary and, therefore, lacked finality. ORS 183.310(5)(b). Teel also argues that, if the December 18 letter was a final order that Teel is time-barred from challenging, the department has violated Teel's due process rights under the Fifth and Fourteenth Amendments to the United States Constitution by depriving Teel of a protected property interest without notice and an opportunity to be heard. Finally, Teel argues that the February 5, 1993, letter is subject to judicial review, because the department issued it without probable cause and because substantial and irreparable harm will result if interlocutory relief is not granted. ORS 183.480(3).

The department responds that the December 18, 1991, letter was a "final order," as that term is defined in ORS 183.310(5)(b), and that Teel had 60 days from the date the order was served in which to challenge it. The department argues that, because Teel did not make a timely challenge, it is precluded from seeking judicial review of the decision to prohibit use of McKay water. The department further argues that the February 5, 1993, letter is not subject to judicial review, because it was not an order, but merely a confirmation of the December 18 final order.

The issue is whether the circuit court had jurisdiction over Teel's 1993 petition for review of the department's 1991 ruling regarding McKay water. The Administrative Procedure Act (APA), ORS chapter 183, provides the jurisdictional basis for judicial review of the department's orders in this case. ORS 183.480 provides:

"(1) Any person adversely affected or aggrieved by an order or any party to an agency proceeding is entitled to judicial review of a final order, whether such order is affirmative or negative in form. * * *

"* * * * *

"(3)   No action or suit shall be maintained as to the validity of any agency order except a final order as provided in this section and ORS 183.482, 183.484, 183.490 and 183.500 or except upon showing that the agency is proceeding without probable cause, or that the party will suffer substantial and irreparable harm if interlocutory relief is not granted."

In determining whether the December 18, 1991, letter was a "final order," our first task is to consider what the legislature meant by the term "final order." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993) ("In interpreting a statute, the court's task is to discern the intent of the legislature."). Because the legislature has defined "final order" in ORS 183.310(5)(b), our analysis of that question stops with the text of the APA itself.

ORS 183.310(5)(b) defines "final order" as follows:

" 'Final order' means final agency action expressed in writing. 'Final order' does not include any tentative or preliminary agency declaration or statement that:

"(A)   Precedes final agency action; or

"(B)   Does not preclude further agency consideration of the subject matter of the statement or declaration."

ORS 183.484, the jurisdictional provision for review of orders in "other than contested cases," provides in part:

"(2)   Petitions for review shall be filed within 60 days only following the date the order is served * * *."

We initially address Teel's argument that the December 18, 1991, letter is not a final order, because its author, a watermaster, was not authorized to issue a final order.

ORS 540.010 provides that the Water Resources Commission shall divide the state into water districts, and ORS 540.020 provides that the Water Resources Director shall appoint one watermaster for each water district. The director has general control over the watermasters. ORS 540.030(1). ORS 540.045(1)(a) provides that each watermaster shall:

"Regulate the distribution of water among the various users of water from any natural surface or ground water supply in accordance with the users' existing water rights of record in the Water Resources Department."

ORS 540.045(4) defines "existing water rights of record" to include "all completed permits."

■■ From the foregoing statutes, we conclude that ORS 540.045 authorizes the watermaster to issue final orders pertaining to a water user's rights under the terms of a permit. The December 18, 1991, letter, informing Teel that "no stored water from McKay Reservoir will be allowed under permits 25920 and 25924, beginning with the 1991 irrigation season," communicated the watermaster's ruling on that subject. That is, the watermaster, acting on behalf of the department, was regulating Teel's use of water in accordance with Teel's existing water rights. We find no basis for concluding that the watermaster's statutory duty to "regulate" existing water rights does not include the authority to issue final orders.

We next consider whether the December 18, 1991, letter was a final order. To resolve that matter, it is helpful to examine the context in which the letter was written. As noted, Teel had been using water from the Umatilla River and McKay since 1959 under two permits issued by the department. The purpose of the permits was to allow Teel to begin constructing diversion projects and the appropriation of water. It was anticipated that, when Teel completed the appropriation of water for a beneficial use, as evidenced by a final proof survey, Teel would obtain a certificate representing a vested, perfected water right. In December 1991, the department had completed, or was near completing, the final proof survey. The December 18 letter stated that the department was in the process of completing "proposed certificates." Thus, in December 1991, Teel's status as a "permittee" was about to change to that of a holder of a perfected water right certificate.

That examination of Teel's status as of December 1991 is important, because the question whether the December 18 letter was a final order subject to judicial review begs a further question, i.e., "final as to what?" There are two possibilities. First, the December 18 letter could have been a

final order as to Teel's right to McKay water under the terms of the proposed certificate. Second, the letter could have been a final order as to Teel's right under the existing permits.

If the December 18 letter was only a statement of Teel's rights under the proposed certificates, then the letter was not a final order subject to judicial review. As to unfinished proposed certificates, the December 18 letter was a "preliminary" statement of the department's position on Teel's use of McKay water, which preceded final agency action and which did "not preclude further agency consideration of the subject matter of the statement or declaration." *See* ORS 183.310(5)(b) (defining "final order").[6] However, the December 18, 1991, letter does not stop at stating what Teel's rights *will be under the proposed certificates*. It also states what Teel's rights *are under the permits*.

The third paragraph of the letter states unequivocally:

> "[N]o stored water from McKay Reservoir will be allowed under permits 25920 and 25924, beginning with the 1992 irrigation season."

That paragraph constitutes a final order as to Teel's use of McKay water under the terms of the permits. It does not provide for any further agency consideration of the matter, short of the certification process. The paragraph clearly gave Teel notice that McKay water could not be used under the permits, *beginning* with the 1992 irrigation season. That notice is neither tentative nor preliminary. It constituted the department's final determination as to Teel's rights to McKay water under the permits.

The December 18 letter was a final order as to Teel's rights to use McKay water under the permits. Teel, thus, had 60 days within which to petition for judicial review of that order. *See* ORS 183.484(2) (setting time limit). Teel's 1993 amended petition for judicial review did not challenge the department's proposed certificates. Rather, it challenged the

---

[6] The "further agency consideration" would occur with the issuance of the proposed certificates and with the administrative process whereby Teel could request reconsideration of the proposed certificates, including the department's determination as to use of storage waters. OAR 690-330-010(2); OAR 690-330-020(1).

department's determination as to Teel's rights under the permits. That challenge came too late. Teel could not obtain judicial review of the department's 1991 decision by seeking review of the February 5, 1993, letter.

Teel also argues that to construe the December 18, 1991, letter as a final order that Teel may not now challenge would violate the Fifth and Fourteenth Amendments to the United States Constitution. Teel raises those constitutional issues for the first time before this court, and we decline to consider them.

■    Teel argues that the department's February 5, 1993, letter is subject to judicial review under ORS 183.480(3). That letter, however, merely reiterates the department's 1991 position on Teel's use of McKay Reservoir water. The February 5 letter reads:

> *"This letter is further confirmation* that you may not use McKay Reservoir water on lands under permits 25920 and 25924." (Emphasis added.)

Teel cannot revive its lost right to seek judicial review of the department's 1991 final order on the basis of a 1993 letter that merely reiterated the department's 1991 decision. *See Carnine v. Oregon State Textbook Comm.*, 62 Or App 344, 349, 660 P2d 201, *rev den* 295 Or 259 (1983) ("Petitioners cannot, under the guise of an attack on the 1979 decision, procure a *de facto* invalidation of the 1977 decision" over which the circuit court did not have jurisdiction). The circuit court erred in setting aside what Teel argued was an order contained in the department's February 5 letter, and the Court of Appeals correctly reversed that portion of the circuit court's judgment.

We agree with the Court of Appeals that the circuit court did not err in setting aside the department's May 1993 order. The department failed to challenge the third basis for the circuit court's decision: that the department's long-standing interpretation of the law is a rule, which cannot be changed without following rule making procedures. The department, therefore, is not entitled to reversal of the circuit court's decision on plaintiff's second claim seeking review of the May 1993 order limiting use of water to acreage

specifically described in the permits.[7] However, we also agree with the Court of Appeals that an injunction is unwarranted in this case and that the circuit court erred in entering an injunction against the department. *See Burke v. Children's Services Division*, 288 Or 533, 548, 607 P2d 141 (1980) (refusing to assume that a state agency will, in the absence of an injunction, refuse to follow the law).

The decision of the Court of Appeals on plaintiff's first claim (alternate acreage) is vacated as moot. Otherwise, the decision of the Court of Appeal is affirmed. The judgment of the circuit court is affirmed in part and reversed in part.

---

[7] We express no opinion about whether the department's practice did or could constitute a rule. *See* ORS 183.310(8) (defining "rule").