No. 560                    June 25, 2025                    417

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of Jim A. Atwood Trust,
Applicant for Outdoor Advertising Sign Permit.

JIM A. ATWOOD TRUST,
*Petitioner,*

*v.*

OREGON DEPARTMENT OF TRANSPORTATION,
*Respondent.*

Office of Administrative Hearings
2019ABC03279;
A175894

Argued and submitted November 30, 2022.

Sara Kobak argued the cause for petitioner. Also on the briefs were Kelly Walsh, Jessica A. Schuh, and Schwabe, Williamson & Wyatt, P. C.

Carson L. Whitehead, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, Powers, Judge, and Hellman, Judge.

POWERS, J.

Affirmed.

**POWERS, J.**

Petitioner Jim A. Atwood Trust seeks judicial review of a final order issued by Oregon Department of Transportation (ODOT) that denied petitioner's application for a permit for a preexisting, nonconforming outdoor advertising sign (OAS). ODOT denied the permit because it determined that petitioner was not the owner of the sign, which was required for the agency to issue the permit. Petitioner challenges that conclusion on review. As explained below, we reject petitioner's challenge to ODOT's final order denying the permit application because, at the time petitioner submitted the application, there was no longer a preexisting, nonconforming sign for which to issue a permit. Further, because petitioner's current challenge is an impermissible collateral attack on a prior final order issued by ODOT, we affirm.

We review ODOT's conclusions of law in its final order for legal error and its factual findings for substantial evidence. ORS 183.482(8)(a), (c). We begin by briefly setting out the statutory framework to contextualize the dispute before us and supplement the applicable law in our later discussion.

The Oregon Motorist Information Act (OMIA) "generally prohibits erecting or maintaining most signs visible to the traveling public from a state highway, unless the sign complies with the provisions of the OMIA, rules adopted under the OMIA, and any federal requirements." *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 637-38, 20 P3d 180 (2001).[1] Under the terms of the regulatory framework, the OMIA "prohibits all but certain preexisting [OASs] and restricts the placement of those signs." *Id*. at 638. A preexisting OAS is one that existed before May 30, 2007. ORS 377.712(1). "[T]he owner of any [OAS] visible from a road or street that is designated as a state highway after May 30, 2007, is entitled to the issuance of an [OAS] permit

---

[1] The Supreme Court explained that the legislature enacted the OMIA to comply with the federal Highway Beautification Act of 1965, 23 USC § 131. *Outdoor Media*, 331 Or at 637. That federal act requires states to provide "effective control" of outdoor advertising signs, which "essentially requires states to prohibit all outdoor advertising signs that are visible from an interstate or primary highway, unless a particular sign" meets certain statutory exceptions. *Id*.

for the sign upon application by the owner of the sign * * * if the sign was lawfully located within a commercial or industrial zone at the time of designation as a state highway." ORS 377.712(2).

With that background on the statutory framework, we turn to the relevant facts, which are not disputed. Petitioner owns a building located on West Burnside Street in downtown Portland, Oregon. The building has an exposed, west-facing, brick wall that abuts a ground-level parking lot and is visible to eastbound traffic on Burnside Street. Petitioner leased the wall space to advertising companies that, until 2009, would either paint advertisements directly on the building or otherwise affix them to the wall. After 2009, a cable, anchor, and bolt system with lighting was installed on the wall that allowed printed vinyl advertisements to be mounted and stretched over the wall's surface.

The cable system was purchased by petitioner's lessee at the time, and petitioner reimbursed the lessee for the costs of the materials and installation by reducing the lessee's rent for some time. In 2014, that lessee assigned its interest in the lease with petitioner to OnDisplay Advertising, LLC. By that point, West Burnside Street, which is also known as Highway 596, was designated part of the National Highway System and became subject to the OMIA. That rendered any sign placed on petitioner's wall nonconforming with the OMIA's size requirements.

Due to that nonconforming status, OnDisplay submitted to ODOT an application for a permit for a preexisting, nonconforming OAS. The application listed OnDisplay as the applicant and petitioner as the owner of the property where the sign was located. OnDisplay's application package included a letter from petitioner explaining that "OnDisplay Advertising works with our company to sell advertising on" the wall.[2] Petitioner's letter also noted that OnDisplay was authorized to apply for the OAS permit and requested that the permit be issued to several parties, including petitioner. Specifically, petitioner's letter requested that the "permit

_____

[2] An applicant for an OAS permit must provide with the application "written proof that the landowner consents to have applicant maintain the proposed sign." OAR 734-060-0000(4)(e).

shall be in the name of: OnDisplay Advertising, J A Atwood, J A Atwood Corporation, their successors and assigns, as his or its interest may appear."

Days later, while OnDisplay's application was pending, Lamar Advertising purchased OnDisplay's assets, including its rights in the advertising lease with petitioner and the potential rights in the pending permit application. ODOT issued the OAS permit in 2015 in the name of OnDisplay only; petitioner was not listed on the permit. Only later, when OnDisplay gave notice to ODOT about Lamar's purchase of OnDisplay's assets, did ODOT update the permit to reflect "Lamar" as the only owner of the 2015 permit. There is nothing in the record that suggests that petitioner ever contacted ODOT about the permit after it was issued to OnDisplay nor is there anything in the record about petitioner contacting ODOT after the permit was updated to reflect Lamar as the owner. Further, there is nothing in the record suggesting that petitioner challenged who ODOT named in the permit in 2015 or at any other time when the permit was renewed.

Lamar operated under the permit and the lease with petitioner until 2019 when the business relationship between Lamar and petitioner soured. Petitioner notified Lamar that it was terminating the lease agreement with Lamar and asked Lamar to turn over the OAS permit to petitioner. Lamar refused to turn over the permit.

Lamar then wrote to ODOT requesting a relocation credit for the OAS, which would allow Lamar to relocate an OAS in lieu of a relocation permit. *See* ORS 377.710(25) (defining "relocation credit" as "a credit for future relocation of a permitted outdoor advertising sign in lieu of a relocation permit"). ODOT employees then visited the building and saw that the vinyl display and the cable system were removed from the wall, and that the wall was newly painted. With the cables and lighting system removed, only the anchors and bolts were left on the wall. ODOT acknowledged that the sign had been removed and granted Lamar the relocation credit. ODOT did not notify Atwood that Lamar requested, or that it granted to Lamar, the relocation credit.

Thereafter, petitioner applied for a permit for a pre-existing, nonconforming OAS for the wall space. Petitioner claimed to be owner of the OAS that was entitled to the permit. ODOT denied petitioner's application. ODOT determined that the requested permit could not be issued because the pre-existing sign had been removed, and thus there was no pre-existing sign for which to issue a permit. ODOT added that it could not issue a new permit because the size of the wall exceeded the size and spacing requirements of the OMIA.

Petitioner requested a contested case hearing before an Administrative Law Judge (ALJ). Petitioner argued that it was entitled to a permit for a preexisting, nonconforming OAS because it has owned the building, which provided the wall used to place advertisements, since at least 1991. The ALJ concluded that petitioner was not the "owner" of the pre-existing "sign" and, thus, was not entitled to an OAS permit. The ALJ reasoned that petitioner was not the "owner" of the sign because petitioner only "owned the surface space, and leased to the advertiser the right to display a sign there," and instead, the owners of the "sign" were petitioner's lessees that "furnished the sign by providing the vinyl printed material with a message and the cable system necessary to suspend the vinyl material from [petitioner's] wall." ODOT adopted the ALJ's order in full as its final order. Petitioner now seeks judicial review of that order.

In three assignments of error, petitioner contends that ODOT's final order is based on legal errors and not supported by substantial evidence in the record. Petitioner asserts, among other arguments, that ODOT erred in interpreting ORS 377.712(2) because the term "sign" refers to the permanent sign display surface and related sign components used to display the advertising signage, rather than just the temporary advertising signage itself. As explained below, we conclude that, because there was no longer a "sign" for which to provide a permit, ODOT necessarily had to deny petitioner's application for a preexisting, nonconforming OAS permit.

We begin by explaining why the 2015 permit was a final order that required ODOT to deny petitioner's application for a permit. A final agency order is a

"final agency action expressed in writing. 'Final order' does not include any tentative or preliminary agency declaration or statement that:

> (A)   Precedes final agency action; or

> (B)   Does not preclude further agency consideration of the subject matter of the statement or declaration."

ORS 183.310(6)(b). The 2015 permit issued to OnDisplay—and later updated to reflect Lamar as owner of record—was expressed in writing, and constituted ODOT's final determination with respect to the permit ownership for the sign on petitioner's building, which precluded ODOT from issuing any other permit for that preexisting sign.

Petitioner did not challenge the 2015 permit or any subsequent renewals of that permit. The record reflects that petitioner's involvement was limited to providing a letter that it, as owner of the land on which the sign was situated, gave OnDisplay permission to apply for the permit. Although OnDisplay's application package included a letter from petitioner requesting that the "permit shall be in the name of: OnDisplay Advertising, J A Atwood, J A Atwood Corporation, their successors and assigns, as his or its interest may appear," petitioner did not contact ODOT to ensure that the agency could in fact issue the permit in the name of all those entities, nor does the record disclose that petitioner undertook efforts to clarify permit ownership with either OnDisplay or Lamar. Given that petitioner did not challenge the 2015 permit or any renewals of the permit in any manner, or otherwise notify ODOT after it issued the permit that petitioner should be named owner of the permit, OnDisplay and later Lamar became the owner of the permit for the sign on petitioner's building.[3] *See* OAR 734-059-0015(5) (providing that "an Outdoor Advertising Sign Permit Owner is a single person"); *and* OAR 734-059-015(4) (including a corporation into the definition of a "person" for purposes of permit ownership).

---

[3] ODOT relies on ORS 183.482(1) as providing a 60-day timeline to challenge the 2015 permit. We need not address the correctness of that assertion, given that petitioner never took any action to point out that ODOT did not name the parties listed as petitioner's letter requested, and thus ODOT never had an occasion to review its permitting decision.

As permit owner, Lamar obtained certain rights associated with the sign, such as the right to request a relocation credit. ORS 377.762; OAR 734-059-0015(5); OAR 734-059-0220(1). A relocation credit allows a permit owner to remove the sign and locate it elsewhere without having to apply for a relocation permit. ORS 377.710(25); *see also* ORS 377.762 (providing that ODOT "shall issue a relocation credit upon the owner's request if" certain criteria are met). One of the conditions precedent to ODOT issuing a relocation credit is that the sign be removed prior to issuance of the credit, ORS 377.762, which Lamar did by removing the vinyl display, cables, and lights.[4]

When Lamar applied for the relocation credit, ODOT staff confirmed that the vinyl display, lights, and cables that were used to display advertisements were removed from the wall of petitioner's building, and that only the anchors and bolts remained on the wall. We assume without deciding that the removal of the vinyl display, lights, and cables was the removal of the sign for purposes of the relocation credit. The other criteria to qualify for a relocation credit were also satisfied: the lease for the sign site between Lamar and petitioner had been lost when petitioner told Lamar it was terminating the lease, and the sign complied with the criteria for a preexisting, nonconforming OAS. ORS 377.762; *see also* ORS 377.712 (setting out requirements for a preexisting, nonconforming OAS). With those conditions satisfied, ODOT had a mandatory duty under ORS 377.762 to issue the relocation credit to Lamar as the permit owner. Therefore, when petitioner submitted its application for an OAS permit after the removal of the sign and the issuance of the relocation credit, there was no longer any sign for which ODOT could

---

[4] We do not opine on the propriety of Lamar's removal of the vinyl display, lights, and cables or whether petitioner owned those components because those issues are outside the scope of this administrative appeal. Relatedly, we note that petitioner filed a separate action against Lamar alleging that Lamar breached its duty of good faith and fair dealing in their business relationship. A jury found that Lamar breached those duties and awarded petitioner a money award, and an appeal of that judgment is currently pending, *Jim A. Atwood v. Lamar Obie Company* (A181594).

Petitioner also filed a civil action against ODOT alleging various constitutional and tort claims against the agency for its conduct related to the permitting process, and an appeal of the trial court's judgment on those claims is also currently pending on appeal, *Atwood v. Oregon Department of Transportation* (A184470).

provide a permit. In those circumstances, ODOT necessarily had to deny petitioner's application, and it did not err in so doing.

Given the foregoing analysis, we conclude that petitioner's current challenge is an impermissible collateral attack on the 2015 permit issued to Lamar. That is, petitioner cannot now use the denial of its permit application to challenge ODOT's 2015 permit. *See Teel Irrigation Dist. v. Water Resources Dept.*, 323 Or 663, 677-78, 919 P2d 1172 (1996) (concluding that the petitioner "could not obtain judicial review of the [agency's] 1991 decision by seeking review of the *** 1993" decision). Accordingly, ODOT did not err in denying petitioner's application for an OAS permit.

Affirmed.